IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


BARBARO NOGUERAS,

    Petitioner,

v.                         CIVIL ACTION NO. 2:05-CV-876-T(WO)

SCOTT A. MIDDLEBROOKS,

    Respondent.

_____/

## PETITIONER'S OBJECTIONS TO THE MAGISTRATE'S REPORT

COMES NOW, the petitioner, Barbaro Nogueras (hereinafter "petitioner"), pro se, and respectfully files these onjections to the magistrate's report in the instant matter.

### INTRODUCTION

I.   Exposing Petitioner To Exhaustion Of Remedies Would Be Futile And Would Cause Irreparable Harm To Petitioner

In the case at bar petitioner has exhausted administrative remedies up to the Southeast Regional Office of the Bureau of Prisons (BOP). In order to reach the aforementioned administrative level petitioner first, 1) filed an Inmate Request to Staff to the Residential Drug Alcohol Program (RDAP) Coordinator; 2) resubmitted the aforementioned to petitioner's Case Manager after the RDAP Coordinator refused to address the request; 3) filed a BP-8½ with his Unit Team in a good faith attempt to find an informal resolution to the instant matter; 5)

filed a BP-9 to the Warden  and Respondent herein, Scott A.
Middlebrooks, after "all" aforementioned administrative remedies
were denied; 6) filed a BP-10 before the BOP Southeast Regional
Office (i.e. located in Atlanta) appealing the Warden's denial
of petitioner's BP-9;  8)  filed an Appeal to General Counsel in
Washington appealing the Southeast Regional Office's denial of
petitioner's appeal;  9)  requested an extension of time in
which to file additional requested documents by the Office of
General Counsel (i.e. documents that were submitted to General
Counsel and apparently were misplaced by his office staff);  9)
petitioner is at present awaiting production of the requested
documents from the Warden's Office) so as to provide same to the
Office of General Counsel.

Petitioner  submits  that  any  further  exhaustion  of
administrative remedies will be futile because, the Office of
General Counsel has "denied" relief to another inmate, Juan
Carlos Cruz ("Cruz")(See Exhibit "A", Juan Carlos Cruz v.
Scott A. Middlebrooks, No. 2:05-CV-877 (M.D.A. Northern Div.
Montgomery 2005)) , who presented to General Counsel the exact
claim as contained in petitioner's habeas corpus. Mr. Cruz has
already exhausted administrative remedies, and the essence of
the claim in his habeas petition is exact to the essence of the
claim in the instant case. For this Court to better understand
the "similarities" between petitioner's claim, and Cruz's claim
petitioner shows as follows:  In his administrative claims
petitioner claims that the BOP has classified him under two
different "statuses" that is, as an INS detainee to deprive him

-2-

of numerous BOP benefits including but not limited to a one year sentence reduction pursuant to 18 U.S.C. §3621(e)(2)(B), upon petitioner's successful completion of the RDAP, and that the BOP declassifies petitioner as an INS Detainee when it comes time for petitioner to work (i.e. INS Detainees are exempted from forced labor pursuant to the Thirteenth Amendment to the United States Constitution). In essence, it is petitioner's claim that he is either, a) being exposed to "involuntary servitude" (i.e. slavery) at the hands of the BOP because, INS Detainees cannot be forced to work and the BOP has forced petitioner to work for the past ten years of petitioner's incarceration or, b) the BOP is denying petitioner the benefit/s of a federally funded program based on petitioner's nationality (i.e. Cuban national). In Cruz's case the petitioner raises identical claims in his administrative remedies. Exhibit "B.

The law is clear, if the Office of General Counsel for the BOP denied Mr. Cruz's appeal then, it will be impossible for the aforementioned office to grant petitioner his requested relief and for said decision not to violate the "Equal Protection Clause" of the Fifth Amendment to the Federal Constitution. It has been petitioner's position in his requests for administrative remedies (i.e. equal to Cruz's position) that, if petitioner is in fact an INS Detainee then, he has and continuous to be exposed to involuntary servitude (i.e. "slavery") or, in the alternative, if petitioner is not an INS Detainee then, he is being discriminated by the BOP based on the fact that the BOP is relying in petitioner's nationality (i.e.

-3-

Cuban) to deprive petitioner of the benefit (i.e. sentence reduction) upon successful completion of the RDAP. In Mr. Cruz.s case the Office of General Counsel denied Cruz's appeal by upholding that Cruz can be classified under two different statuses for the benefit of the BOP. See Exhibit "A" (General Counsel's denial of Cruz's administrative appeal).

## ARGUMENT AND MEMORANDUM OF LAW

In recommending dismissal of the instant action for failure to exhaust administrative remedies, the Magistrate's Report relies in numerous cases in specific, the Eleventh Circuit decision in Winck v. United States, 327 F.3d 1296, 1300 n.1 (11th Cir. 2003). However, petitioner respectfully submits that the Magistrate's reliance in Winck, supra, is misplaced. This case is analogous to the Court's decision Linfors v. United States. 673 F.2d 332 (1982)(cited in Winck, supra, at 1304, n. 4, 5). Citing Linfors the Eleventh Circuit in Winck held that "Generally, exhaustion is not required where no genuine opportunity for adequate relief exists, irreparable injury will result if the complaining party is compelled to pursue administrative remedies, or an administrative appeal would be futile." Id at 1304 (citing Linfors, 673 at 334). The petitioner in Winck, contrary to petitioner in the instant matter, failed to demonstrate even an attempt to exhaust administrative remedies. As set forth above, the petitioner in the instant matter has filed more that five petitions seeking administrative remedies to the BOP authorities and "all"

-4-

petitions have been denied.  Further, Mr. Juan Carlos Cruz, as set forth above, an inmate situated equally to petitioner and detained by  the same respondent at petitioner's institution, has exhausted "all" administrative remedies and the Office of General Counsel denied relief as explained ante.  Consequently, it would be futile for petitioner to seek his last available administrative remedy before General Counsel (i.e. who will be opposing the granting of petitioner's habeas corpus).

This Court has subject matter jurisdiction even though petitioner has not exhausted administrative remedies.  The existance of jurisdiction in cases such as petitioner's is best explained by the Fifth Circuit Court of Appeals:  "[w]hat we really determine is a judicial policy akin to comity," Mindes v. Seaman, 453 F.2d 197, 199 (5th Cir. 1971), that is, a "judicial abstention doctrine." Meister v. Tex. Adjutant General's Dep't , 233 F.3d 332, 339 (11th Cir. 2000). cert. denied, 532 U.S. 1052, 121 S.Ct. 2194, 149 L.Ed.2d 1025 92001). "As such, 'we review the requirement of exhaustion as...based on principles of comity and not as imperative limitation of the scope of federal habeas corpus power." In re Kelly, 401 F.2d 211, 213 (5th Cir. 19₦8)(per curiam).  Taking        the aforementioned  decisions   by   the   Fifth   Circuit   into consideration, the Eleventh Circuit held in Winck that: "We have also expressly concluded that exhaustion 'is not a jurisdictional bar to habeas relief' when seeking release to state custody pursuant to 28 U.S.C. §2254." citing Esslinger v. Davis, 44 F.3d 151₦, 340 at 132, 71 S.Ct. at ⅃₁₁¬₁2. The Court in Winck relied on the Supreme  Court's  standard  of  analysis

involved in determining when administrative remedy exhaustion is required. (relying on McKart v. United States, 395 U.S. 18,11, 13, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). In McKart the Court concluded as follows:

"Accordingly, in determining whether the exhaustion rule should be rigidly applied, the Court has, on a case-by-case basis, employed a balancing analysis which considers both the interests of the agency in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances. See also Montgomery v. Rumsfeld, 572 F.2d 250, 253 (9th Cir. 1978)(explaining McKart).

With this framework in mind, this Court should rule in disfavor of exhaustion. Exhaustion in the case at bar would not fulfil the Court's analysis and standard set forth in McKart because, 1) there is "no" AIOP interest involved in petitioner's exhaustion of remedy, 2) the agency has not recognized committing any error when denying Juan Carlos Cruz's, ante, remedies and thus, cannot now recognize committing an error in petitioner's case without violating Cruz's constitutional rights under the Equal Protection Caluse of the Fifth Amendment to the Federal Constitution, 3) there is no need for the BOP to make a record in the instant matter, in light that the record of this case is at present before General Counsel's Office by way of exhaustion of administrative remedies, 4) petitioner's writ of

-6-

habeas corpus is in no way circumventing or an attempt to circumvent the BOP's administrative remedy process, 5) the BOP has had ample opportunity to render an independent decision in the instant matter as it did when it denied relief in <u>Cruz v. Middlebrooks</u>, supra, (Exhibit "A"), 6) there exists no interest by any other private party in the instant matter and thus, allowing this habeas corpus to proceed in Court would not preclude any other party from adequate redress of their grievances.    In essence, this case does not fall within the standards enunciated by the Supreme Court in McKart, supra, and as such there is no need to require petitioner to continue exhausting administrative remedies.    Any further attempt by petitioner to obtain relief via exhaustion of administrative remedies will be futile.

Petitioner prays of this Court to take judicial notice of the fact that in the instant matter petitioner is either the victim of racial discrimination or, an individual being exposed to involuntary servitude at the hands of the BOP. Notwithstanding, which of the aforementioned violation/s is/are being inflicted upon petitioner, the truth of the matter is that petitioner is being exposed to constant "suffering" by way of the "humiliations" that come about from the infliction of the aforementioned Civil Rights violations.

II.  <u>Exhaustion Of Administrative Remedies Is Not Required By Statute In The Instant Matter</u>

This Court has subject matter jurisdiction over the instant case even though petitioner has not finalized exhausting his

administrative remedies because, exhaustion of administrative remedies is not required by statute and thus, it is not jurisdictional. See Brown v. Rison, 895 F.2d 535 (9th Cir. 1990). Any additional exhaustion of remedies in the instant matter is not required to confer subject matter jurisdiction by this Court over petitioner's §2241 petition, because the explicit exhaustion requirements which are contained in the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Prison Litigation Reform Act (PLRA) do not apply to habeas petitions filed under 28 U.S.C. §2241. See United States v. West, 2003 WL 1119990, *2 (E.D. Mich. February 20, 2003); Hicks v. Hood, 203 F.Supp.2d 379, 382 (D. Or. 2002). Additionally, in light that the BOP Program Statement is mandatory in nature and automatically excludes from early release "all" Cuban nationals, any further exhaustion of remedies on petitioner's part would be futile and shall be excused.

III.  Exhaustion Of Administrative Remedies Is Not Required In The Instant Matter Because, Petitioner Is Undergoing Cruel And Unusual Punishment

Petioner respectfully submits that he is the victim of the constant infliction of cruel and unusual punishment at the hands of the respondent. The humilations and sufferings that come about from the acts of discrimination are sometimes more painful than scars physically inflicted upon a human, and there exists no question that the mental scars caused by the infliction of the aforementioned "cruel and unusual punishment" will accompany petitioner for his entire life. On the other

-8-

hand, exposure to "involuntary" servitude (i.e. slavery) cannot be looked upon under a lesser standard of than the standard under which discrimination is reviewed.  To dismiss this action would constitute the exposing of petitioner to countless days and months of "discrimination" and "involuntary" servitude and thus, prolonging of this litigation would undoubtedly prolong petitioner's exposure to "cruel and unusual punishment", all in violation of petitioner's constitutional rights under the Eighth Amendment of the Federal Constitution.

## CONCLUSION

Although there is no bright light definition as to when government misconduct (i.e. BOP) is so shocking and outrageous as to violate the universal sense of justice, it would be impossible for this Court to "dismiss" petitioner' habeas corpus for failure to finalize exhaustion of remedies and for this case not to fall  of the other side of the line that is, the side of the unjust.  Dismissal of petitioner's habeas corpus will undoubtedly prolong petitioner's exposure to "discrimination" or/and "involuntary servitude" (i.e. "slavery"), and such disregard for petitioner's  rights under the Civil Rights Act of 1964, Thirteenth Amendment to the Federal Constitution, and the Equal Protection Clause, would be anathema to our judicial system and contrary to the duty imposed by Article III of the federal Constitution upon this Honorable Court.

For the foregoing reasons petitioner humbly prays of this Court to allow the instant matter to proceed before this Court.

-9-

October 5th , 2005                    Respectfully submitted,



Barbaro Nogueras, pro se,

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing legal instrument was served on this 5th day of October, 2005, to: United States Attorney's Office, Leura G. Canary, U.S. Attorney, P.O. Box 197, Montgomery, AL 36101-0197, and to Scott A. Middlebrooks, Warden (i.e. Respondent), Federal Prison Camp Montgomery, Maxwell Air Force Base, Montgomery, AL 36112. The service was conducted via first class mail by depositing same in the F.P.C. Montgomery's mail box designated for legal mail only. this certificate of service is submitted pursuant to 28 U.S.C. §1746.

Barbaro Nogueras, pro se.

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

JUAN CARLOS CRUZ,                          :

    Petitioner,                            :

vs.                                        : CASE NO.:

SCOTT A. MIDDLEBROOKS, Warden,             :

    Respondent.                            :


## PETITION FOR THE ISSUANCE OF THE WRIT OF HABEAS CORPUS

COMES NOW, the petitioner, Juan Carlos Cruz (here-in-after "petitioner"), pro se, and respectfully files this petition before this Honorable Court. As grounds in support for the granting of the instant petition the petitioner states and shows as follows.

### I.  JURISDICTION

This Court's jurisdiction is invoked under 28 U.S.C. §2241.

### II.  JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this petition. A petition for the writ of habeas corpus filed by a federal inmate under 28 U.S.C. §28 U.S.C. §2241 is proper where the inmate is challenging the manner in which his or her sentence is being executed. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998). A district court has jurisdiction over a federal prisoner's habeas corpus petition challenging the determination by the Bureau of Prisons that he or she is inelegible for a sentence reduction under 18 U.S.C. §3621(e)(2)(B). Perez v. Hemingway, 157 F.Supp.2d 790, 793 (E.D. Mich. 2001).

## III.  VENUE

This Court is the proper venue wherein to file the instant petition.  See Hernandez v. Campbell, 204 F.3d 861 (9th Cir. 2000); Hooker v. Sivley, 187 F.3d 680 (5th Cir. 1999); United S      v. Weathersby, 958 F.2d 611 (5th Cir. 1992).

## IV.  SUMMARY OF ARGUMENT

In the case at bar petitioner has successfully completed the Residential Drug Alcohol Program ("RDAP") and the warden refuses to grant him a one year sentence reduction based on the fact that petitioner is a Cuban national.  The essence of the claim in the instant matter consists of the fact that the Bureau of Prisons cannot violate an inmate's "Due Process" by classifying that inmate under two statuses that is, petitioner has been classified by the Bureau of Prisons ("BOP") as a regular inmate completing an imposed term of imprisonment who is required to work while serving his sentence, and on the other hand petitioner has been classified as an INS Detainee who according to the BOP cannot receive a sentence reduction under 18 U.S.C. §3621(e)(2)(B).  However, INS Detainees cannot be forced to work (i.e. BOP PS 5110.11) because, such practice violates a person's constitutional rights under the Forteenth Amendment of the United States Constitution which prohibits "slavery" or "involuntary servitude".

In essence, for work purpose/s the BOP classifies petitioner as a regular federal inmate.  However, for program benefits the BOP classifies petitioner as an INS Detainee.  The truth of the matter is that the BOP appears to want to have both sides of the coin.  It is petitioner's position that the aforementioned

-2-

practice is unconstitutional and that petitioner is presently being exposed to involuntary servitude or, discriminated by the BOP by its denial to grant petitioner the one year sentence reduction upon petitioner's successful completion of the Residential Drug Alcohol Program ("RDAP") (i.e. RDAP is federally funded and thus, cannot discriminate against a person based on his/her color, sex, nationallity, political/religious/sexual preference/s, etc...etc...)

For the foregoing reasons petitioner prays of this Court to issue an "Order" to the BOP whereby, the BOP is ordered to classify petitioner under a single status that is, as an INS Detainee (i.e. in which case petitioner cannot be forced to work) or, in the alternative as a regular inmate serving an imposed term of imprisonment (i.e. under this status petitioner would be required to work but would be eligible for the one year sentence reduction under 18 U.S.C. §3621(e)(2)(B)).

### V.   STATEMENT OF FACTS

1. Petitioner was indicted by a federal grand jury sitting in the Southern District of Florida. The grand jury charged petitioner with possession with intent to distribute a detectable amount of cocaine in violation of 21 U.S.C. § 841.

2. A jury trial started on April, 1997. On April 3, 1997, the jury found petitioner guilty of the §841 (i.e. possession) Count.

3. On June 20, 1997, petitioner was sentenced to 136 months' imprisonment, Supervise Release for five (5) years, and a $100.00 Assessment.

4. Petitioner will have finished completing his sentence on

November 8, 2006.  However, with the one year sentence reduction petitioner should have bee release on or about June 6, 2005 . Clearly, petitioner has an invested liberty interest in the outcome of the instant matter.  This 28 U.S.C. §2241 "Petition for the Issuance of the Writ of Habeas Corpus" ensues.

## ARGUMENT AND MEMORANDUM OF LAW

In the case at bar it has been the position of the BOP that petitioner does not qualify for the one year sentence reduction because, 1) petitioner "is" an INS detainee , 2) as a detainee petitioner is precluded from being placed in a half way house upon completion of the RDAP so as to undergo after care treatment. However, the BOP's position in the instant matter is contrary to the record which clearly demonstrates that INS does not oppose for the BOP to place petitioner in a half way house upon successful completion of the RDAP (Exhibit "A"), and that it is unnecessary for petitioner to be placed in a half way house to receive the required after care because, such after care can be provided to petitioner at the Federal Prison Camp Montgomery (See Exhibit "B" where the Warden acknowledges that after care will be provided to petitioner at the institution of confinement).

The BOP advertently or inadvertently has misinterpreted Congressional intent as set forth in 28 C.F.R. Part 48 to End §550.58(i), which excludes INS Detainees from the one year sentence reduction.  An inmate does not become an INS detainee until he has completed his imposed term of imprisonment and the BOP surrenders the inmate's custody to the INS.  In many occasions such as that of the Cuban Mariel Detainees, INS contracts the BOP to house such detainees pending deportation or, being paroled into

society.   However,  a  federal  inmate  does  not  become  an  INS
Detainee  until  INS  surrenders  the  detainee's  custody  to  the  BOP.
In  essence,  petitioner  will  not  become  an  INS  Detainee  until  he
finishes  serving  his  sentence  and  "only"  if  INS  decides  to
reassign  petitioner  to  the  BOP  for  further  findings  consistent
with  a  deportation  order  "if"  one  is  ever  issued.   The  BOP  has  a
specific  Policy  Statement  design  to  deal  with  the  special
circumstances  faced  by  INS  Detainees.   See  BOP  PS  §5111.03  which
among  other  things  exempts  INS  Detainees  from  educational  programs
which  require  mandatory  participation  by  regular  inmates,  and  it
also  exempts  INS  detainees  from  being  exposed  to  mandatory  or
forced  labor.

In  the  instant  case  numerous  legal  principles  are  self
evident.   First,  If  petitioner  is  an  INS  Detainee  then  petitioner
is  exempted  from  work  and  mandatory  educational  programs.   Thus,
in  the  instant  matter  petitioner  has  been  exposed  to  involuntary
servitude  for  the  past  eight  years.   Second,  in  the  event  that
petitioner  is  not  considered  an  INS  Detainee  then,  the  BOP's
denial  of  the  one  year  sentence  reduction  upon  petitioner's
completion  of  the  RDAP  constitutes  a  violation  of  petitioner's
civil  right/s  to  be  free  from  discrimination  based  on  petitioner's
origin  or  nationality.   Third,  the  RDAP  is  a  federally  funded
program  and  as  such  the  program  cannot  discriminate  against  any
participant  based  on  the  participant's  race,  color,  nationality,
religious/political/sexual  preference/s,  etc...etc...  See  Civil
Rights  Act  of  1964,  Document  Number:  PL  88-352,  Date  July  2,  1964,
88th  Congress,  H.R.  7152.   Further,  not  only  does  the  BOP's
conduct  in  the  instant  matter  violates  petitioner's  civil  rights

-5-

but it also violates petitioner's constitutional rights under the "Equal Protection Clause" of the United States Constitution. See City of Cleburne v. Cleburne Living Center, 473 U.S. 452, 87 L.ed.2d 313 (1981). "In City of Cleburne the Court held that: 1) The equal protection clause requires that "all" persons similarly situated be treated alike, and 2) Equal protection violation occurs when government treats someone different than another who is similarly situated. Id. In the instant matter it is evident that petitioner is being treated different to other inmates equally situated that is, "no" INS Detainee can be required or forced to work - however, petitioner is required or, forced to work; "all" none detainees qualify for the one year sentence reduction upon successful completion of the RDAP - however, even though petitioner is not classified as an INS detainee for work purposes the BOP refuses to recognize his eligibility for the one year sentence reduction under 18 U.S.S. §3621(e)(2)(B). In essence, the BOP is advertently treating petitioner "different" than it treats other inmates situated similarly. Eagleston v. Guido, 41 F.3d 865 (2nd Cir. 1994)(holding that threshold requirement of equal protection claim is a showing that government discriminated among groups).

As demonstrated above the BOP is including but not limited to Mr. Scott A. Middlebrooks, Warden, has opted to selectively apply the law in a discriminatory fashion against petitioner thereby, violating petitioner's constitutional rights under the equal protection clause. See Central Airlines, INC. v. United States, 138 F.3d 333 (8th Cir. 1988)(holding that Equal Protection Clause prohibits government officials from selectively applying law in

-6-

discriminatory way). In the case at bar the fact that petitioner is a "Cuban National" is being held against him in a discriminatory fashion which has now culminated in the classifying of petitioner as a suspect class (i.e. Respondent is aware of petitioner's race/nationallity/origin and there exists no question that his discriminatory acts are motivated by petitioner's race. See cf. Personal Administrator v. Feeny, 442 U.S. 256, 279, 60 L.Ed.2d 870 (1979) ("In order to state a claim under the EPC, a plaintiff must allege not only that the defendants were aware of her race at the time of their action, but also that defendants acted because of her race).

In the instant matter the actions of Scott A. Middlebrooks, Warden, and those of his supervisors clearly demonstrate that petitioner has been subjected to racial classification without such classification serving "any" governmental interest. See cf. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) ("Our action today makes explicit [that] federal racial classifications, like those of a State, must serve a compelling governmental interest, and must be narrowly tailored to further that interest"). There exists no governmental interest which the BOP can invoke that would excuse the BOP's discriminatory practice/s against petitioner. "As a general rule, alien inhabitants of a state are entitled to the constitutional guarantees of due process and equal protection (3 AmJur 2d, Aliens and Citizens §§ 8, 9). See also 68 L.Ed 255 (annotation)(dealing with the question as to what provisions of the Federal Constitution are invocable by aliens independently of treaty). Id. at De Canas v. Bica, 47 L.Ed.2d 876 (1976). "In

-7-

(accordance) consonant with the foregoing general principles, the Supreme Court has held invalid as violative of the 'Equal Protection' clause of the 14th Amendment., (1)....(6) state statutes denying 'Welfare benefits to resident aliens who have not resided in the U.S. for a given number of years." Id. at 879. Similarly, any BOP Policy Statement that denies an alien 'equal protection' or 'due process constitutes    an unconstitutional provision of law.

## VI.  CONCLUSION

Although there is no bright light definition as to when government misconduct and violation's of the rights afforded by the Procedural Due Process are so shocking and outrageous as to violate the universal sense of justice. Notwithstanding, it would practically be impossible for this Court to deny this petition and for this case not to fall on the side of the unjust, outrageous and shocking. For the foregoing reasons petitioner prays of this Honorable Court to issue an "Order" whereby, 1) the Warden of the F.P.C. Montgomery is ordered to grant a one year sentence reduction to petitioner based on the fact that petitioner has successfully completed the RDAP; 2) this Court orders the immediate release of petitioner, 3) the warden is ordered to "stop" exposing petitioner to involuntary servitude ("slavery") by forcing petitioner to work when in fact the BOP has classified petitioner as an INS Detainee, and 4) this Court declares any BOP Policy Statement used to violate petitioner's constitutional rights as an unconstitutional provision of law.

Date: September 9, 2005      Respectfully submitted,

-8-

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing legal instrument was served on this 9th day of September, 2005, to: Scott A. Middlebrooks, Warden for the Federal Prison Camp Montgomery, Maxwell Air Force Base, Montgomery, AL 36112. The service was conducted via first class mail (Certified Return Receipt). This Certificate of Service is submitted under penalty of perjury pursuant to 28 U.S.C. §1746.

Juan Carlos Cruz, pro se.

-9-

EXHIBIT "B"

**Administrative Remedy No. 366938-A2**
**Part B - Response**

You appeal the Warden's denial of your ineligibility for early release pursuant to 18 U.S.C. § 3621(e). You claim you have been erroneously classified as an INS detainee and to classify you as such in order to deny you early release is discriminatory. You request your sentence be reduced by one year upon successful completion of the RDAP and transitional services.

Program Statement 5330.10, Drug Abuse Programs Manual, Inmate, stipulates that inmates are required to complete the community transition component of the residential drug abuse treatment program to be considered for a sentence reduction under 18 U.S.C. § 3621(e). In addition, P.S. 7310.04, Community Corrections Center Utilization and Transfer Procedure, states inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement shall not ordinarily participate in CCC programs.

Records indicate that Immigration and Customs Enforcement (ICE) (formerly Immigration and Naturalization Service) has lodged a detainer against you for possible deportation. You are ineligible to participate in a CCC program and, consequently, ineligible for early release consideration at this time. Should ICE determine you will not be deported, staff will review your case for CCC placement and early release. We find no evidence to support your allegation of discrimination regarding this matter. Based on the above, we concur with the Warden's decision, find it appropriate, and in accordance with policy.

Your appeal is denied.

August 5, 2005
_____
Date

Harrell Watts, Administrator
National Inmate Appeals

| | | | | |
|---|---|---|---|---|
| MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A—REASON ... appeal to the warden's denial of my BP-9:

(1) The Regional Office has erroneously classified me as an INS detainee when in fact, the Records Department at the F.P.C. Montgomery has informed me that I am "NOT" an INS detainee. Further, the Regional Office has not addressed the issue as set forth in my appeal addressing the fact that if I am an INS detainee then, I have been forced to work for the past eight years contrary to the 13th Amendment to the United States Constitution (i.e. prohibition of involuntary servitude because, BOP Policy Statement clearly holds that INS detainees don't have to work. Therefore, in such case the BOP must compensate me in the amount of $86,528.00 under minimum salary wages for the past eight years).

(2) The Regional Office denial relies on the assertion that I must go to a half way house to complete the transcitional services (i.e. aftercare) required by the RDAP. However, as such services can be provided for me in prison (i.e. as informed to inmate Barbaro

5-21-05 DATE                    _Jesus C. Cruz_ SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED
JUN 1 3 2005
ADMINISTRATIVE REMEDY BRANCH

RECEIVED
APR 26 2005

| DATE | GENERAL COUNSEL |
|---|---|

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 366 938-A2

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION
SUBJECT: _____

| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL |
|---|---|

ATTACHMENT

Nogueras in the Warden's Response to his BP-9 attached hereto as Exhibit "A". Nogueras Appeal is at present before the Regional Office.).

In essence, if am I not an INS detainee for "work" purposes then, I cannot be classified an INS detainee in order to deny me the benefit/s of a federally funded program. The BOP's change of appellant's status as to fit its needs is nothing more than a tactical way of covering up its descriminatory practice/s against "Cubans" and other non-deportable aliens.

Based on the foregoin appellant prays of this Office to overturne the Regional Office's decision and to order the Warden at the F.P.C. Montgomery to reduce appellant's sentence by one (1) year upon his successful completion of the RDAP and the transitional services which will be provided at the F.D.C. Montgomery while appellant awaits to complete the remaining of his sentence. Please see Exhibit "A". Please, see Exhibit "B" wherein, it is clear that INS does not oppose my placement in a half way house nor, does my detainer allow same to be held against me to deny me "any institutional benefit/s.

RECEIVED
WARDEN'S OFFICE

05 AUG 18  AM 11: 26

FPC MAXWELL AFB AL

```
CARLOS CRUZ, 40595-004
MONTGOMERY FPC     UNT: R-DAP BHM     QTR: B03-019U
MAXWELL AIR FORCE BASE
MONTGOMERY,  AL 36112
```